[See Case No. 14,350.]

---

## Case No. 14,356.

### UNION BANK OF GEORGETOWN v. FORREST et al.

[3 Cranch, C. C. 218.] [1]

Circuit Court, District of Columbia. Dec. Term, 1827.

MASTER AND SERVANT — BANK TELLER — BOND — CONSTRUCTION—USAGE—SURETIES.

1. The condition of a teller's bond "faithfully to perform all the duties assigned to him in said bank, and make good to the said bank all damages which the same shall sustain through his unfaithfulness, or want of care," comprehends damages arising from his want of care, as well as from his unfaithfulness.

[See Bank of U. S. v. Brent, Case No. 910.]

2. The words "six months" in the fourth section of the act of congress of the 2d of March, 1821 [3 Stat. 619], "To extend the charters of certain banks in the District of Columbia," mean six calendar months.

3. The teller's bond, executed under the original charter, covered defalcations arising under the extended charter; and after the time when the charter would have expired but for such extension.

4. It was not necessary that the teller should be appointed yearly, and from year to year; and an interval of three days, during which the teller continued to act as such without being reappointed, did not destroy the plaintiffs' right of action upon the bond, for damage incurred after such interval, by the teller's want of care.

5. Under the condition of this bond, the defendants are bound to save the plaintiffs from all loss arising from any want of care of the teller, if by any degree of care on the part of the teller it might have been avoided.

6. The neglect of the cashier to settle the daily accounts of the teller according to the by-law of the bank does not discharge the sureties.

[Cited in People's Building & Loan Ass'n v. Wroth, 43 N. J. Law, 76.]

7. The usage of other banks requiring only reasonable care and diligence, cannot affect the express condition of the bond.

Debt on the teller's official bond, against George P. Forrest, the teller of the plaintiffs' bank, and Washington Bowie and Nathan Lufborough, his sureties. The condition of the bond was: "That whereas the said George P. Forrest has been appointed to the office of teller in the said bank: Now, if the said George P. Forrest shall faithfully perform all the duties assigned him in said bank, and make good to the said bank all damages which the same shall sustain through his unfaithfulness or want of care, then this obligation shall be void, otherwise

[1] [Reported by Hon. William Cranch, Chief Judge.]

to be and remain in full force. It is understood that the teller is appointed, or elected from year to year, and that this obligation shall continue in force so long as the said George P. Forrest shall act as teller in said bank." The breach assigned in the declaration was, the not making good to the plaintiffs the sum of $1,893.76, being the damages which the plaintiffs aver they have sustained by reason of the teller's want of care in performing the duty assigned him of accounting for and paying over to the plaintiffs the moneys which came into his hands as teller between the 16th of November, 1818, and the 23d of January, 1822.

There were seven pleas. Issue was joined on the first, second, and fifth, and demurrers to the third, fourth, sixth, and seventh. The third plea averred that the said G. P. Forrest did, during the time of his continuance in the said office of teller, faithfully perform the duty of accounting for and paying over to the plaintiffs, all the moneys put into his hands as teller, "without this that the said George P. Forrest failed to account for and pay over the said sum of $1,893.76, in the said declaration mentioned, through, or by reason of any unfaithfulness, dishonesty, evil design, purpose, or intent of the said George P. Forrest in the performance of the duties assigned him as aforesaid; and this the said defendant is ready to verify," &c. The fourth plea averred that the said G. P. F. did, during, &c. "faithfully perform the duty of accounting for and paying over to the plaintiffs, all the moneys put into his hands as such teller. But the said defendant, admitting that in the course of accounting as aforesaid, the said sum of $1,893.76, of the moneys put into his hands, as such teller as aforesaid, did appear to be unaccounted for and unpaid by him to the plaintiffs, and was not accounted for and paid over to the plaintiffs, yet the defendant says that the said failure so to account for and pay over the said sum of money, did not arise from any unfaithfulness, dishonesty, evil intent, design, or purpose of the said G. P. Forrest, in performance of the said duty, to account for and pay over, to the plaintiffs, the moneys put into his hands as teller, in manner and form, as the plaintiffs have complained, &c. and this he is ready to verify," &c. The sixth plea averred, "that during the time, &c. it was by the president and directors of the said bank, made the stated duty of the said G. P. F. as teller, to receive from the customers of the said bank, payments and deposits of money in the same, and to pay out to the bearers of checks upon the said bank, the amount of such checks, out of certain moneys of the said bank therein kept for that purpose by the said G. P. Forrest, during the usual hours of business in the said bank, viz. from 9 a. m. to 3 p. m., and on the closing of the bank from day to day, to account with the cashier of the said bank,

for all moneys received by him, the said G. P. F., as teller, in the course of such day, and for all moneys paid out by him, as teller, upon checks; and upon such accounting from day to day to count over the said money so kept in the said bank, under the care and custody of the said G. P. F. as aforesaid, or the balance remaining of the same, together with the moneys received by him as teller, in the course of each day, as aforesaid, after deducting from the same all moneys paid out upon checks by him, as such teller, in the course of each day, as aforesaid; and to leave, under the exclusive care and custody of the said cashier thereof, at the closing of the said bank for each day as aforesaid, the entire balance of the said moneys so counted and remaining as aforesaid, without the said G. P. F.'s having any care or custody of the said moneys, or any concern with, or any responsibility for the same, after the closing of the said bank as aforesaid, until the opening of the same on the next succeeding morning. And the said defendant, in fact, says, that the said G. P. F. did daily, and from day to day, during, &c. at the closing of the bank on each day, as aforesaid, faithfully account with said cashier, for all of the said moneys as aforesaid, and faithfully turn over to the said cashier, and leave in the said bank, under his exclusive custody and care, the entire balance which appeared upon such daily counting and accounting as aforesaid, and was then and there found by the said cashier to be remaining of the said moneys as aforesaid; and upon such accounting for, counting, and turning over of the said moneys to the said cashier daily, and from day to day as aforesaid, the said cashier daily, and from day to day as aforesaid was satisfied with, and accepted as just and satisfactory, the daily accountings, settlements, and turnings over of the said moneys by the said G. P. F. as aforesaid; and the said defendant in fact says, that the said daily accountings, settlements, and turnings over of the said moneys were honestly and faithfully made by the said G. P. Forrest in all things on his part and behalf to be therein done and performed, in the faithful discharge, by the said G. P. F. as such teller as aforesaid of his duties as such teller. Without this, that any sum or sums of money, the property of the said plaintiffs, during the time and times aforesaid, came or were put into the hands of the said G. P. F., in any other manner, or for any other purpose, than as hereinbefore mentioned, and set forth, and this the said defendant is ready to verify," &c. To this plea there was a special demurrer for duplicity.

The seventh plea was pleaded by Mr. Lufborough, one of the sureties, for himself alone, and averred, that before the commencement of the plaintiffs' action aforesaid viz. on the 4th of March, 1821, the act of

congress, entitled "An act to incorporate the Union Bank of Georgetown," had expired by its own limitation, without the president and directors of the said bank having filed, at any time within six months from the passage of the act of congress of the 2d of March, 1821 (3 Stat. 618), "To extend the charters of certain banks in the District of Columbia," their declaration in writing, assenting to and accepting the extension of their charter, under the terms, conditions, and limitations contained in the said act; and without having complied with the condition contained in the fourth section of the act, whereby the corporate body created by the name of the "President and Directors of the Union Bank of Georgetown," who are the plaintiffs in this action, was, on the 4th of March, 1821, and before the commencement of this suit, dissolved, and utterly extinct. To this plea, the plaintiffs replied, in substance, that they did, on the 21st August, 1821, comply with, and accept the terms of the act of the 2d of March, 1821, extending their charter. The defendant rejoined that the 21st of August was more than six months after the passage of the act of the 2d of March, 1821, and so not within the time limited for the acceptance of the extension of the charter. To this rejoinder the plaintiffs demurred.

To the third and fourth pleas the demurrer was general.

J. Dunlop, for plaintiffs. These two pleas rely upon the ground, that fidelity alone is an answer to loss by want of care. Upon this point he was stopped by the court. As to the sixth plea, he said it does not answer the allegation of damage by the want of care. • An honest account is not sufficient; nor is the cashier's acquittance. This plea does not state that the teller paid over all moneys which he was bound to pay, but only the money which remained in his hands. The declaration is sufficiently explicit; it is not necessary to set out in the declaration the particular sums which make up the aggregate amount lost by the teller's negligence. 1 Chit. 512, 513, 520, 523, 624; Barton v. Webb, 8 Term R. 459; 2 Chit. 622; Shum v. Farrington, 1 Bos. & P. 640; 1 Tidd, Prac. 618, as to duplicity in pleading.

Mr. Jones, contra. The condition consists of two branches: fidelity and care. The declaration states no breach of duty, which is not answered by fidelity. A simple failure to account for money is the only breach whereby the plaintiffs sustained damage to the amount of $1,893.76, through the want of care of the teller in performing the duty so assigned to him, that is, accounting. The sixth plea states a special performance,—a special accounting. The demurrer brings before the court the sufficiency of the inducement. The plea is not double, nor is it bad because the traverse is special. Stephens, Pl. 188.

Mr. Key, in reply. The defendant had a

right to stipulate against inevitable casualties, as well as against his dishonesty. He has bound himself to make good all loss which the plaintiffs might sustain by his want of care. Fidelity is no answer to this. The breach assigned in the declaration is, that he did not make good the damage which the plaintiffs sustained by his not paying out, or repaying the money he received. The manner in which the loss happened is mere inducement. It was not by not accounting, but by not paying. The sixth plea is liable to the same objection as the third and fourth, that is, that it does not answer the breach assigned. If the first part, that is, accounting satisfactorily to the cashier, be a defence, the residue of the plea makes it double. If it be not of itself a defence, it is not aided by the residue. The duty of the defendant, as averred in his plea, was to repay to the cashier, every night, the money he received in the morning, except what he should have correctly paid out in the course of the day. But the averment of the performance is, that he repaid to the cashier what remained in his hands.

THE COURT (nem. con.), on the 7th of June, 1827, rendered judgment for the plaintiffs upon the demurrers to the third, fourth, and sixth pleas.

The seventh plea was not filed until the subsequent term, namely, December 17, 1827. The question arising upon the demurrer to the rejoinder to the replication to this plea was, whether the six months given to the bank, in which to accept or reject the extension of their charter, by the act of the 2d of March, 1821, were lunar months or calendar months. If calendar months, the acceptance was in due time; if lunar, it was not, and the charter had expired. From the 2d of March to 21st of August is 172 days; six lunar months, of four weeks each, is 168 days only. The question arose out of the fourth section of the act of congress of the 2d of March, 1821, c. 18 (3 Stat. 618), entitled "An act to extend the charters of certain banks in the District of Columbia," by which it is enacted, "that unless the president and directors, for the time being, of each of the banks respectively whose charters are hereby extended, shall, on behalf of their stockholders, and in virtue of an authority from them, or a majority in interest and number of them, file their declaration, in writing, in the office of the secretary of the treasury, within six months from the passage of this act, assenting to and accepting the extension of the charter hereby granted, under the terms, conditions, and limitations contained in this act, such bank shall forfeit all title to such extension of charter."

J. Dunlop, for plaintiffs. In the case of Lacon v. Hooper, 6 Term R. 224, Lord Kenyon regretted that the old decisions obliged him to say that it must be understood to be lunar months. This was upon an act of parliament giving premiums to certain vessels

who should remain out upon fishing voyages, in certain high latitudes, for a time not less than fourteen months from their clearing out. But the act of congress, extending the plaintiffs' charter, is upon a mercantile subject; and even in England, in a statute upon such subjects, the computation is by calendar months. 2 Bl. Comm. c. 9, p. 141, Christian's note. So in ecclesiastical cases, respecting presentations, because the church calculates by calendar months; and one reason given by Lord Coke is, that it may support right. Catesby's Case, 6 Coke. 62. In Maryland, from the year 1715 to the year 1779, the six months for the enrolment of deeds had been considered as calendar months. as appears by the preamble to the act of November. 1779, c. 10, which was enacted to remove the doubts which had "arisen in some of the courts of justice" in that state; and declares, "that in all cases where the enrolment of deeds is directed by law to be made within six months from the day of the date of the same deeds, the said months shall be deemed and taken, and are hereby declared to be calendar months." The same mode of computation prevails in Pennsylvania. In New York, however, the computation is by lunar months. But in South Carolina, Massachusetts, Kentucky, and Tennessee, the computation is by calendar months. Starkie, pt. 4, p. 1398, note; 2 Mass. 170, note; Avery v. Pixley, 4 Mass. 460; Brudenell v. Vaux, 2 Dall. [2 U. S.] 302; Com. v. Chambre, 4 Dall. [4 U. S.] 143; Loring v. Halling, 15 Johns. 119; Stackhouse v. Halsey, 3 Johns. Ch. 74.

Mr. Worthington, contra. The meaning of the word "month," at the common law, has been settled by a long course of judicial decisions, from the earliest times. 2 Bl. Comm. c. 9, p. 141; Tullet v. Linfield, 3 Burrows, 1455; Lacon v. Hooper, 6 Term R. 224; King v. Adderley. Doug. 463; Talbot v. Linfield. 1 W. Bl. 450. This is the general rule; the other cases are exceptions. Catesby's Case rests on the word "half-yearly." So in the cases where the word quarterly is used. Leffingwell v. White, 1 Johns. Cas. 100; Jackson v. Clark, 7 Johns. 217; Biddulph v. St. John. 2 Schoales & L. 521; Rex v. Bellamy. 1 Barn. & C. 500. In Pennsylvania, the court decided upon the phraseology of the statute. In acts of congress, generally, the legislature has distinguished and expressly mentioned calendar months, when they meant calendar months; as in the collection act of March 2, 1799, § 75 (1 Stat. 627); the act of April 20, 1818, c. 124, §§ 1. 2, 3 (3 Stat. 466); the act of April 10. 1816, § 3 (3 Stat. 266), incorporating the Bank of the United States; and the original charter of the plaintiffs' bank, February 18, 1811, § 4 (2 Stat. 636).

Mr. Jones, on the same side. The act of 1779 confines the construction to the old act of enrolment of 1715. There is in law no lunar year. Parts of a year, such as a half or a quarter, mean parts of a solar year. The subject-matter of the statute cannot con-

trol the general rule. Catesby's Case depended upon the words tempus semestre, which, says Lord Coke, "being spoken in the singular number, (as it appears by the dictionaries,) signifies half a year, or six months, namely, such six months as make half a year; and there is a great difference in our ordinary speech between the singular number, as a twelvemonth includes all the year, according to the calendar; but twelve months shall be reckoned according to twenty-eight days to each month." Another reason for the judgment in Catesby's Case, as stated by Coke, is, that " 'verba accipienda sunt secundum subjectam materiam'; and because this computation of months concerns those of the church, there is great reason that the computation should be according to the computation of the church, which they best know." If this new charter had spoken of months in relation to the discount of notes. &c., there might be some ground for the exception. But this language is not applied to a mercantile act, and has nothing to do with the law-merchant. Congress, in legislating upon commercial subjects and mercantile persons, still use the word calendar, when they mean calendar months; leaving the inference that "month' alone means lunar month.

Mr. Key. in reply. This is an American act of congress, legislating for this District as a substituted legislature for that of the state of Maryland. It is true that, in an English act of parliament, the word "month" means, generally, a lunar month; but that is no reason why the same construction should be given to an act of congress, there being no common law of the United States. Under a Maryland statute, the computation would be by calendar months; as in the case of supersedeas under the act of 1791, c. 67, § 1, where the two months and the six months have always been construed to mean calendar months. So also in the statute of enrolment of deeds: so also in the charter of the Bank of Columbia, &c. If the construction be doubtful, it ought to be against a forfeiture, and in affirmance of the right. One of the reasons for the judgment of the court, as stated by Lord Coke (6 Coke. 62a), is, that "when the computation is doubtful, it is good to determine it for the relief and remedy of him who hath right, and, for the advantage of right, to give him the longest time, to the end that he lose not his right."

THE COURT (nem. con.) was of opinion that the legislature meant to give the bank six calendar months to file their acceptance of the extension of their charter; and CRANCH, Chief Judge, in delivering the judgment of the court, observed, that it is probable that the common law construction of the word months, as meaning lunar months, was never adopted in Maryland, and that it seemed to be quite obsolete, in regard to the common business of life, in this country; that the act of congress is addressed to bankers, mercantile men, who always com-

pute by calendar months; and that it is probable that the legislature intended to allow the same kind of months as they had mentioned in the original charter.

Upon this demurrer THE COURT rendered judgment for the plaintiffs.

Upon the trial of the issues, after the plaintiffs had given in evidence the teller's bond, and proved the deficit of his accounts to the amount of ——, and the acceptance of the extension of the charter,

Mr. Jones, for defendant, moved the court to instruct the jury that the plaintiffs could not recover upon that evidence; and contended that the bond, being given under the original charter, did not cover any defalcations occurring under the extended charter; and that it was necessary to prove the appointment of the teller by the acts of the president and directors.

But THE COURT (nem. con.) refused to give the instruction; being of opinion that there was sufficient evidence of the acceptance of the extension of the charter, under the acts of May 4, 1820, and March 2, 1821, and that the condition of the bond extended to defalcations occurring in January, 1822; and that the Union Bank, in 1822, was the same Union Bank which existed at the date of the bond.

THE COURT permitted evidence to be given by the defendant, to show that there might be an apparent balance against the defendant, and yet the plaintiffs not damnified; it being possible that such apparent balance might arise from error in accounting, and not in the actual transaction.

Mr. Jones, for defendant, then prayed the court to instruct the jury, in effect, that the appoinment of teller must have been from year to year, and that an interval of three days between the end of one year and his reappointment for the next year, (during which three days however he continued to act as teller,) destroyed the right of the plaintiffs to recover upon the bond for damage incurred, after such interval, by the want of care of the defendant; and also that the obligation of the bond ceased on the 4th of March, 1821, the day on which the charter of the bank would have expired if it had not been extended by the acts of 1820 and 1821.

But THE COURT (nem. con.) refused to give the said instruction.

Mr. Key, for plaintiffs, then moved the court to instruct the jury that the defendants are bound under their contract with the plaintiffs contained in the said bond, to save them from all loss arising from any want of care of the said teller; and that if mistakes were made by the said teller, in his business as teller, by which the said money was lost, and which loss, by any degree of care on the part of the said teller, in his office, could have been avoided, the defendants are liable therefor on the said bond.

Mr. Jones, contra. The degree of care is not stated in the bond. It means reasonable care; such as a prudent man would use in his own affairs; such as a bailee for hire is bound to use.

Mr. Worthington, on the same side, cited the following authorities, as to the obligation of a bailee for hire. Finucane v. Small, 1 Esp. 315; 1 Gow, 30; Peake, 114.

THE COURT (MORSELL, Circuit Judge, doubting) gave the instruction as prayed, observing that in the cases of bailment, the parties are supposed not to have made any express contract as to the extent of the liability of the bailee, and therefore the law fixes his liability for him. But here the parties have entered into an express contract upon the subject; and the court can only construe that contract according to its legal force and effect.

To this instruction the defendant's counsel took a bill of exceptions, which stated that the defendant objected to the instruction, "understanding it to be intended so to construe the bond as to exact of the defendant a kind and degree of care, beyond the reasonable and proper care which a prudent, cautious, and careful man would have exerted, or should be presumed to exert in his own affairs in the like case; and therefore the defendants requested the court so to modify the instruction requested by the plaintiffs, as to have it understood by the jury that a neglect of no other or higher kind or degree of care than the ordinary and reasonable care which a prudent, cautious, and careful man would have exerted, or should be presumed to exert, in his own affairs, in the like case, could be imputed to the defendants in this action, in so far as the plaintiffs seek to charge them for a loss occasioned by want of care. But the court, being of opinion that the condition of the bond stipulated for a different and higher degree of care than the ordinary care required of agents, clerks, or bailees, who have not expressly contracted to be liable for want of care, therefore gave the instruction requested by the plaintiffs as above, without modification; and rejected the modification proposed by the defendants as above, to which also the defendants excepted.

Mr. Jones then prayed the court to instruct the jury in effect, that the neglect of the cashier to settle the daily accounts of the teller, whereby the risk of error was increased, discharged the sureties in this bond. U. S. v. Van Zandt, 11 Wheat. [24 U. S.] 187; People v. Jansen, 7 Johns. 332.

Mr. Key, contra, cited U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720, and U. S. v. Nicholl, 12 Wheat. [25 U. S.] 509.

THE COURT (nem. con.) refused to give the instruction.

Mr. Jones then moved the court to instruct the jury, "that if they find from the evidence that according to general bank usage, no other or higher kind or degree of care was required of tellers or other bank officers, in the transaction of the bank business, than what

a prudent, cautious, and careful man would exert in his own affairs, and in the like case; and that the plaintiffs themselves had, for several years before the claim was set up by them in this case, tolerated and accepted of the said Forrest without complaint, a discharge of his duty as teller, with no other or higher kind or degree of care than as aforesaid; then it is competent for the jury to presume that the said Forrest and his sureties from any other or higher kind and degree of care than as aforesaid; and in such case the plaintiffs are not entitled to recover in this action, any loss, as for the want of care of the said Forrest; unless they prove to the satisfaction of the jury that he failed in the instance complained of, in such reasonable and proper care as a prudent, cautious, and careful man would have exerted, or should be presumed to exert, in the like case."

But THE COURT (nem. con.) refused the instruction, because the evidence, as they thought, did not warrant the jury in inferring such usage, or such toleration; and because such usage, if proved in regard to banks who have not taken security against damage sustained by "want of care" of the teller, would not control the express stipulation to indemnify a bank for such damage, and because the instruction prayed would throw the burden of proof of negligence upon the plaintiffs, the bank, after they had shown that he had received money which he had not accounted for.

Verdict for the defendants; motion for new trial overruled; judgment for the defendants.